UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

-----------------------------------------------------------------

**GARDEN CITY BOXING CLUB, INC., is a
California corporation with its principal place
of business located at 2380 So. Bascom Avenue,
Suite 200, Campbell, CA 95008.,** as Broadcast
Licensee of the **June 8, 2002 Lewis/Tyson** program,

|  |  |
|---|---|
| Plaintiff, | **MEMORANDUM OF LAW**<br>**IN SUPPORT OF**<br>**MOTION FOR DEFAULT JUDGMENT**<br>Civil Case No. 1-05-CV-1077-RCL |
| -against- | Honorable Royce C. Lamberth |

RAHEB ABDUL-KHALEK, *et, al.*,

Defendants.

-----------------------------------------------------------------

This action was commenced pursuant to 47 U.S.C. §605, *et seq*. The Summons and

Complaint in this matter was filed with the Court on May 27, 2005, and was served on the

Defendants, **RAHEB ABDUL-KHALEK, Individually, and as an officer, director, shareholder**

**and/or principal of A.K. FOODS, INC. d/b/a OLLIE'S TROLLEY RESTAURANT a/k/a**

**OLLIE'S & CLICKS a/k/a CLICKS, and A.K. FOODS, INC. d/b/a OLLIE'S TROLLEY**

**RESTAURANT a/k/a OLLIE'S & CLICKS a/k/a CLICKS,** as set forth in the proofs of service

by Dwayne Boston, which were filed with the Court on July 28, 2005 as ECF Documents 4 and 5.

The Plaintiff owned the commercial rights to distribute the Lewis/Tyson boxing

match on June 8, 2002, to commercial establishments for a licensing fee. The Defendants herein did

not purchase the rights to intercept and exhibit this encrypted boxing match from the Plaintiff, but

intercepted and exhibited same without legal authorization.

On any given occasion when an encrypted program is being broadcast, such as a prize

-1-

fight, private auditors identify commercial establishments intercepting and exhibiting the program without paying the Plaintiff for the right to do so. In advance, Plaintiff provides investigative agencies with a list of legal paying locations within District of Columbia and a team of auditors visit any commercial establishment within any particular territory which is not named on the legal list during the time of the transmission of the prize fight. Attached to the Plaintiff's affidavit are copies of the affidavits of the witnesses verifying the exhibition of the boxing program at Defendant commercial establishments.

The time within which the Defendants may answer or otherwise move with respect to the First Amended Complaint herein has expired. The above cited Defendants have not answered or otherwise moved with respect to the First Amended Complaint, and the time for the Defendants to do so has not been extended. Said Defendants are not infants or incompetents. Upon information and belief, the Defendants are not presently in the military service of the United States. No part of the judgment being sought herein against the defaulting Defendants has

ever been paid.


Plaintiff, by contract, was granted the right to distribute the Tyson/Lewis boxing match scheduled for June 8, 2002, via closed circuit television. Pursuant to the aforesaid contract, Plaintiff entered into subsequent agreements with various entities in the State of District of Columbia, allowing them to publicly exhibit the program to their patrons. Plaintiff expended substantial monies in consideration of the aforementioned agreement to transmit the said boxing match to those entities within the State of District of Columbia who had contracted for same with the Plaintiff for exhibition to their patrons.

The Defendants, and/or its/their agents, servants, workmen or employees, with full knowledge that said closed circuit program was not to be received and/or exhibited by entities unauthorized to do so, did, at the time of its transmission, exhibit the closed circuit program at their principal places of business willfully, and for purposes of direct or indirect commercial advantage or private financial gain and with the intent of willfully defrauding Plaintiff of revenue.

As a result thereof, Plaintiff was damaged and pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II), Defendants are indebted to Plaintiff for the unlawful exhibition for commercial advantage of the closed circuit television signal of the Lewis/Tyson boxing match on June 8, 2002, of up to the sum of $10,000.00. *See*, Subscription Television of Greater Washington v. Kaufman, B.C., 606 F. Supp. 1540 (D.D.C.1985); International Cablevision, Inc. v. Sykes, 997 F. 2d 998 (2d Cir. 1993).

In addition, Plaintiff is entitled to the statutory damage amount of up to $100,000.00 for the intentional unlawful interception of the closed circuit television signal of the Tyson/Lewis boxing match on June 8, 2002, pursuant to 47 U.S.C. §605(e)(3)(C)(ii).

The defaulting Defendants willfully and knowingly violated said federal statute. The actions in purposely defrauding the Plaintiff were affirmative and could only have been accomplished by overt acts done to avoid paying the legal subscription rate for a commercial establishment. The fact that the exhibition of the event was witnessed by the auditor in Defendant commercial establishment demonstrates that it was a *de facto* illegal showing, as said establishment was not a legal subscriber to Plaintiff's programming.

Defendants' overt act included one or more of the following four scenarios: use of illegal deciphering chip (descrambler) in a satellite receiver; possession of a pirate cable box commonly known as a "black box"; registering the commercial establishment as a residential account instead

-1-

of as a commercial account; or ordering the event for the residence and moving the residential box to the commercial location.

Any of the above mentioned acts were intentional and were done for commercial financial gain and all required scheming and overt acts justifying the imposition of the statutory damages. Accordingly, Plaintiff respectfully requests that statutory damages in the amount of up to $100,000.00 be awarded against the defaulting Defendants as allowed under 47 U.S.C. §605 (e)(3)(C)(i)(II) and (e)(3)(C)(ii).

The Judgments requested herein are for a sum certain and therefore no inquest is necessary. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, there is no just reason for delay in these default judgments as the interest of justice require the issuance of judgment as requested without further delay. We respectfully ask the Court to accept the following statutory authority for the damage requested.

### DAMAGES

There is one published signal piracy case in the District of Columbia involving a distributor of cable de-scrambling devices. The instant case is the first one involving a commercial establishment pirating an event. There are no published cases applying the Act to this fact pattern in the District of Columbia, and no cases on Pacer other than the instant case classified as 490 (cable and satellite piracy).

The Circuits of the United States have not agreed on the application of the Federal Communications Act to cases like the one at bar. Subscription Television v. Kaufmann, 606 F. Supp. 1540 (D.D.C. 1985), the only District of Columbia case, is consistent with what Plaintiff

-2-

contends is the better approach. One approach, the one Plaintiff does not support, applies the

Seventh Circuit case, <u>United States v. Norris</u>, 88 F. 3d 462 (7th Cir. 1996) and/or the Third Circuit

Case <u>TKR Cable Co. v. Cable City Corp.</u>, 267 F.3d 196, 197 (3d Cir. 2001). This case finds that

sections 605 and 553 do not overlap. The approach that Plaintiff endorses arises in the Second

Circuit cases, <u>International Cablevision, Inc. v. Sykes (Sykes I)</u>, 997 F.2d 998, 1007 (2d Cir. 1993),

and <u>International Cablevision, Inc. v. Sykes (SykesII)</u>, 75 F.3d 123 (2d Cir. 1996). In <u>Kaufmann</u>

the court found a distributor of cable descramblers liable under Section 605, a result which could

only arise under <u>Sykes</u> and its progeny. Under <u>Sykes,</u> for a factual scenario like the one at bar both

605 and 553 would apply. In cases following Sykes such as those in the Second Circuit damage

awards are made under 605 only, as was done in <u>Kaufmann</u>. Plaintiff will argue for damages under

605 without foreclosing its right to an award under 553 should this Honorable Court decide 553

applies.

     Without compromising its rights under 553, Plaintiff seeks damages pursuant to 47 U.S.C.

§605(e)(3)(C)(i)(II), which provides as follows:

> the party aggrieved may recover an award of statutory
> damages for each violation of subsec. (a) of this section involved
> in the action in a sum of not less than $ 1,000.00 or more
> than $10,000, as the court considers just...

and pursuant to 47 U.S.C. §605(e)(3)(C)(ii) , which states as follows:

> In any case which the court finds that the violation
> was committed wilfully and for purposes of direct
> or indirect commercial advantage or private financial
> gain, the court in its discretion may increase the award
> of damages, whether actual or statutory, by an amount
> of not more than $ 100,000.00 for each violation of
> subsection (a).

Subsection (a) as referred to above, prohibits the unauthorized reception ("interception") and divulgence ("publication/dissemination") of said broadcast. 605 also provides for full costs, reasonable attorney fees and a permanent injunction.

In comparison, 47 U.S.C. §553  provides for statutory damages of up to $10,000.00, enhanced damages of up to $50,000.00 plus full costs, reasonable attorney fees and a permanent injunction.

The Federal Communications Act allows for actual damages, or in the alternative statutory damages. Actual damages under the statute comprise all damages suffered by plaintiff as a result of the violation and any profits of the Defendant. Clearly, in the default setting actual damages cannot be estimated as Plaintiff cannot establish the profits of the non-appearing defendant. Thus, Plaintiff prays for statutory damages. Even with a full trial, Plaintiff's damages are immeasurable. Plaintiff's product is the excitement the spectator feels when watching a world class sporting event unfold in real time. By pirating Defendant's broadcast of the event and making it available Defendant has deprived Plaintiff of the benefit of its exclusive licensing agreement for this event.

Had Defendant legitimately ordered the event the cost to exhibit the event in Defendant's place of business would have been $20.00 times the capacity of the location plus $200.00 in fees. The rate card for the even is attached hereto as Exhibit "A." If the independent auditor's estimate of the capacity of the establishment is correct, Defendant would have paid $1,200.00. Courts typically award Plaintiff the amount of the cover charge. In this case a cover charge of $10.00 was assessed from patrons. At the time the auditor visited there were 13 patrons, although over the course of the evening no doubt additional patrons viewed the event and paid the $10.00 cover charge. It would be reasonable to multiply the cover charge times the capacity of the establishment to

-4-

estimate Defendant's profits from the cover charge, or $600.00. Estimating Defendant's profits from

the sale of food and beverages is also a problem,  yet any estimate should be based on the capacity

of the establishment.  Because it is impossible to calculate actual damages Plaintiff prays that

statutory damages in an amount of up to the statutory maximum of $10,000.00 be awarded.

Plaintiff is also entitled to enhanced damages as the Defendant's actions were clearly willful

and undertaken for purposes of direct or indirect commercial advantage or private financial gain.

Defendant could not have accidentally intercepted Plaintiff's signal, it could only result from one

of several intentional acts as outlined in the Plaintiff's affidavit. The fact that the Defendant charged

a cover of $10.00 to enter the establishment make clear that his purpose was private financial gain.

Such behavior entitles the Plaintiff to enhanced damages.  Cablevision Sys. N.Y. City Corp. v.

Faschitti, 1996 U.S. Dist. LEXIS 1212 (D.N.Y. 1996).  Plaintiff prays for substantial enhanced

damages.

Plaintiff requests that it be granted an award pursuant to statute which not only acts as

restitution for the wrongs perpetrated upon its rights by the Defendant, but, also to deter similar

piracy in the District of Columbia and elsewhere. This very argument was specifically made by Judge

Chin in Cablevision Systems New York City Corporation v. Faschitti, 1996 U. S. Dist. LEXIS 1212;

38 U. S. P. Q. 2d (BNA) 1156 (S.D.N.Y. 1996), wherein the Court insightfully opined as follows:

> In light of the nature of the violation alleged in this case, however,
> I find that a higher award is necessary to deter future violations of
> the communications law. Faschitti's violation was willful and flagrant,
> and his failure to appear in the action illustrates his indifferent
> attitude toward the communications law, (citation omitted). In addition
> it is likely that Faschetti's interception cost Cablevision more than simply
> the fees it would have received if those in the tavern had purchased the
> right to view the fight legitimately. Many non-subscribers may feel no
> need to subscribe to Cablevision when they can access programming

such as pay-per-view at commercial establishments.

Cablevision at p. 5 LEXIS.

Likewise, the Court in Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc., 219

F. Supp. 2d 769, 2002 U.S. Dist. LEXIS 16247 (S.D. Tx. 2002), noted that deterrence is one of the

goals of 47 U.S.C. §605 and that to require the offending establishment to pay the price it would

have paid had it legally contracted to exhibit the event "would do nothing to accomplish this

objective of the statute." Id. at 776. The Court further addressed willfulness in its opinion, awarding

enhanced damages:

> Based on the limited methods of intercepting closed
> circuit broadcasting of pay-per-view events and the
> low probability that a commercial establishment could
> intercept such a broadcast merely by chance, however,
> courts have held conduct such as that of [defendant] in
> this case to be willful and for the purposes of direct or
> indirect commercial advantage or private financial gain.

Id. at 776 (citations omitted).

The Court further noted that "willfulness has been defined by the Supreme Court as

'disregard for the governing statute and an indifference for its requirements.'" Cablevision Sys. N.Y.

City Corp. v. Lokshin, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (quoting Trans World Airlines, Inc.

v. Thurston, 469 U.S. 111, 126, 83 L. Ed. 2d 523, 105 S. Ct. 613 at 627 (1985)).

Plaintiff is entitled to statutory and enhanced damages under the statute to be set within the

discretion of this Honorable Court. Plaintiff prays that damages be set that will deter future pirating

behavior.

## INJUNCTION

Pursuant to 605(e)(3)(B)(i) (and 553(c)(2)(A)) the court "may grant temporary and final

injunctions on such terms as it may deem reasonable to prevent or restrain violations."

Such an injunction was awarded in Subscription Television v. Kaufmann, 606 F. Supp. 1540 (D.D.C. 1985). The Court noted the loss of subscribers and the fact that the Plaintiff's sole source of revenue was subscription fees. The Court recognized the importance of Plaintiff maintaining its status as the sole source of its proprietary programming in order to retain existing subscribers, to acquire suitable programming. Most importantly, the Court recognized that monetary damages cannot make them whole, no matter how great the award. Thus a permanent injunction was granted. All of these considerations apply to the instant case. Plaintiff must be able to maintain its subscriber base and attract new business by providing business establishments with events that attract adequate audiences. Defendant's actions, if left unchecked will inevitably lead to a decrease in the subscriber base and may compromise Plaintiff's ability to obtain licensing agreements for quality events in the future. Because Plaintiff can demonstrate irreparable harm and the inadequacy of legal remedies, a permanent injunction should be granted.

## COSTS AND ATTORNEY FEES

Plaintiff is also entitled to recover its full costs including awarding reasonable attorneys' fees. The costs of this action, including filing fees, service fees, investigative fees and reasonable attorney fees are included in the Attorney Affidavit of Costs and Fees.

## PRE-JUDGMENT INTEREST

District Courts have considerable discretion in awarding pre-judgment interest, and the purpose of such awards is to compensate plaintiff for any delay in payment. Kaseman v. District of Columbia, 329 F. Supp. 2d 20 (D.D.C. 2004). Plaintiff respectfully requests pre-judgment interest on the award as allowed by law.

## BASIS FOR JOINT AND SEVERAL LIABILITY

The Plaintiff also submits authority for the Court to enter judgment against both the corporate Defendant as well as its named owner. "The doctrine of vicarious liability or infringement, as it relates to the field of copyright law, exists when two elements are met: (1) the individual in question must supervise or at least have the ability to supervise the infringing activity or conduct, and (2) the individual must have a financial interest in the allegedly infringing activity." Cook v. Jane Lyons Adver., 1998 U.S. Dist. LEXIS 14709 (D.D.C. 1998). Here the individual Defendant has the right and ability to supervise the activities at the corporate Defendant location and has a financial interest in those activities. Plaintiff has shown that infringing activity took place and thus the individual and corporate defendants are jointly and severally liable for any damage award.

## CONCLUSION

In conclusion Plaintiff respectfully requests that statutory damages be awarded in an amount of up to $10,000.00, that enhanced damages   in an amount of up to $100,000.00 be awarded, that full costs and reasonable attorney fees be awarded as set forth in the Attorney Affidavit, that pre-judgment interest be applied to the award as allowed by law and that a permanent injunction be granted restraining future violations of the Federal Communications Act.

**WHEREFORE,** your deponent respectfully requests that this Court in its discretion  grant a permanent injunction and  judgment by default under the Plaintiff's complaint against the Defendants jointly and severally as follows:

**Against, RAHEB ABDUL-KHALEK, Individually, and as an officer, director, shareholder and/or principal of A.K. FOODS, INC. d/b/a OLLIE'S TROLLEY RESTAURANT a/k/a**

**OLLIE'S & CLICKS a/k/a CLICKS,**

1)     under the Federal Communications Act in the sum <u>of up</u> to TEN THOUSAND DOLLARS ($10,000.00)

2)     and under the Federal Communications Act a sum of <u>up to</u> ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for enhanced damages for Defendant's willful violation of 605(a)

3)     and under the Federal Communications Act costs and Attorney fees of ONE THOUSAND EIGHT HUNDRED EIGHTY SEVEN DOLLARS AND FIFTY CENTS ($1,887.50)

and further

**Against, A.K. FOODS, INC. d/b/a OLLIE'S TROLLEY RESTAURANT a/k/a OLLIE'S & CLICKS a/k/a CLICKS**

1)     under the Federal Communications Act in the sum of <u>up to</u> TEN THOUSAND DOLLARS ($10,000.00)

2)     and under the Federal Communications Act a sum of <u>up to</u> ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for increased damages for Defendant's willful violation of 605(a)

3)     and under the Federal Communications Act costs and Attorney fees of ONE THOUSAND EIGHT HUNDRED EIGHTY SEVEN DOLLARS AND FIFTY CENTS ($1,887.50)

together with interest on the award as allowed by law and a permanent injunction restraining the Defendants from violating the Federal Communications Act and for such other relief as the Court may deem just.

Dated: September     2005
Ellenville, NY 12428

/s/ Margaret J. Boeringer
Margaret J Boeringer
Lonstein Law Office, P.C.
1 Terrace Hill; P.O. Box 351
Ellenville, NY 12428

Sworn to before me this
day of September 2005

/s/   April Draganchuk
*April Draganchuk*
*Notary Public State of New York*
*Registration No. 4945872*

-9-

*Residing in Ulster County*
*My Commission Expires Jan. 27, 2007*

Exhibit A

# TYSON VS. LEWIS
## Heavyweight Championship Bout
## June 8, 2002

# RATECARD

## $20.00 x Fire Capacity

→ If fire capacity exceeds 200 patrons, customer will pay for 200 patrons with a $20 per patron overage

→ If customer is showing fight in a room that is less than fire code, customer will pay $20 x capacity of room + $200 Auditors fee.

→ All deals will have an overage

→ All deals will have a $200.00 technical fee.